UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TOWN OF ABITA SPRINGS, | * | No. 15-cv-00451-CJB-KWR |
| *Plaintiff*, | * | Judge Carl J. Barbier |
| vs. | * | Magistrate Karen Wells Roby |
| ARMY CORPS OF ENGINEERS, | * | Section J |
| *Defendants*. | * | Division 4 |

184-001.3

# FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(2), and with written consent of the opposing party, Plaintiff Town of Abita Springs ("Abita Springs") respectfully amends its complaint, making the following allegations against the Defendants, U.S. Army Corps of Engineers, Lieutenant General Thomas P. Bostick, John McHugh, and Martin S. Mayer (collectively, "Corps").

## NATURE OF THE CASE

1. Abita Springs brings this case against the Corps because the Corps issued an unlawful wetlands destruction permit (MVN-2013-2952-EOO) to Helis Oil & Gas Company, LLC ("Helis Oil") to begin the first phase of a fracking project.

2. The Corps issued this permit in violation of regulations that prohibit the Corps from authorizing destruction of wetlands unless the Corps reasonably concludes that there is no "practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a), *see also id.*, § 230.12(a)(3). Where, as here, the permitted activity is not "water dependent … practicable alternatives … are presumed to be available, unless clearly demonstrated otherwise." 40 C.F.R. § 230.10(a)(3). Here, the Corps' analysis of alternatives 1) unlawfully relied on information that the Corps failed to make

1

available to the public during the public comment period, and 2) was arbitrary and capricious. The Corps failed to justify a conclusion that Helis Oil's drilling and well pad must be placed in wetlands to achieve the basic purpose of drilling for hydrocarbons.

3. The Corps followed unlawful procedures, failing to allow for public comment on more than 500 pages of documentation Helis Oil submitted to complete its application *after* the close of the comment period. The Corps violated proper procedure when it deemed Helis Oil's application complete and publicly noticed it without information essential to complete the application and essential to meaningful public comment. By failing to disclose critical material during the comment period, the Corps deprived Abita Springs of its right under 5 U.S.C. § 553 and 33 C.F.R. § 325.3(a) to participate in rulemaking.

## JURISDICTION

4. This Court has jurisdiction over this matter because it is a civil action arising under the laws of the United States. 28 U.S.C. § 1331.

5. The claims in the case at bar arise under the Administrative Procedure Act, 5 U.S.C. § 551 et seq., the Clean Water Act, 33 U.S.C. § 1251 et seq., the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## VENUE

6. Pursuant to 28 U.S.C. § 1391(e), venue in this action is proper in the Eastern District of Louisiana because the wetlands at issue are located within this district and the permitting process at issue occurred within this district.

## PARTIES

7. Plaintiff Abita Springs is a political subdivision of the State of Louisiana,

organized and existing pursuant to Louisiana law. Abita Springs is located within St. Tammany Parish, Louisiana. It has a population of approximately 2,500 citizens.

8. Abita Springs is a "person" for the purposes of the APA judicial review provisions. *See* 5 U.S.C. §§ 701(b)(2), 551(2).

9. Much of Abita Springs' identity and value as a place to live, work, and recreate derives from its clean environment and peaceful setting.

10. Abita Springs enjoys a unique connection to the Southern Hills Aquifer, located under the wetlands where Helis Oil proposes its project, because Abita Springs' identity is inextricably entwined with the cleanliness and purity of the Southern Hills Aquifer water.

11. Abita Springs has economic, environmental, recreational, historic, and aesthetic interests in the Helis Oil application to the Corps for a dredge and fill permit under Section 404 of the Clean Water Act.

12. Abita Springs residents attend Lakeshore High School, which is immediately across the street from the entrance to the proposed Helis Oil site.

13. Abita Springs is injured and faces the threat of further injury because of the Corps' issuance of the permit, which risks contamination of the Southern Hills Aquifer and degradation of Abita Springs' environmental amenities and reputation. This Court has the power to redress Abita Springs' injury by vacating and remanding the Corps-issued permit.

14. If given the opportunity to comment on the complete application and full record, Abita Springs would have submitted comments which could have changed the Corps' decision on whether the Helis Oil application meets the legal requirements for permit issuance.

15. Abita Springs has a legally protectable interest in the quality of the environment in its vicinity, which will be impacted by Helis Oil's project. Abita Springs is reasonably

concerned about the potential and real adverse impacts to Abita Springs and its citizens of Helis Oil's permit and on the impacts of future Helis Oil projects reasonably related to the permit.

16.  Defendant U.S. ARMY CORPS OF ENGINEERS is a federal agency under the APA (5 U.S.C. § 701(b)(1)) and NEPA (42 U.S.C. §§ 4321 et seq.).

17.  Defendant JOHN M. McHUGH is the Secretary of the U.S. Army and, therefore, an officer or employee of an agency under the APA (5 U.S.C. §§ 701(b)(1), 702) and NEPA (42 U.S.C. §§ 4321 et seq.). He is sued in his official capacity.

18.  Defendant LT. GENERAL THOMAS P. BOSTWICK is the U.S. Army Chief of Engineers and the Commanding General of the U.S. Army Corps of Engineers and, therefore, an officer or employee of an agency under the APA (5 U.S.C. §§ 701(b)(1), 702) and NEPA (42 U.S.C. §§ 4321 et seq.). He is sued in his official capacity.

19.  Defendant CHIEF MARTIN S. MAYER is the head of the Regulatory Branch of the U.S. Army Corps of Engineers, New Orleans District, and, therefore, an officer or employee of an agency under the APA (5 U.S.C. §§ 701(b)(1), 702) and NEPA (42 U.S.C. §§ 4321 et seq.). He is sued in his official capacity.

20.  The Defendants are responsible for issuing permits to dredge and fill wetlands under Clean Water Act § 404, and for ensuring full public participation in the permitting process.

## LEGAL BACKGROUND

**A.  The Clean Water Act**

21.  Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Clean Water Act § 101(a), 33 U.S.C. § 1251(a).

22.  The Clean Water Act prohibits the "discharge of any pollutant by any person"

into navigable waters without a permit. Clean Water Act § 301(a), 33 U.S.C. § 1311(a); *see also* 33 U.S.C. §§ 1362(7), (12) *and* 33 U.S.C. § 1344(a).

23. The Clean Water Act defines pollutant to include dredged spoil. Clean Water Act § 502(6), 33 U.S.C. § 1362(6).

24. The Corps is responsible for issuing permits for the discharge of dredge or fill material into navigable waters pursuant to the Clean Water Act § 404(a). 33 U.S.C. § 1344(a).

25. The Clean Water Act provides that the Corps may only issue permits for the discharge of dredged and fill material "after notice and opportunity for public hearings. . . ." Clean Water Act § 404(a), 33 U.S.C. § 1344(a).

26. The Clean Water Act mandates that the Corps publish notice of an application for a dredge and fill permit only after "an applicant submits all the information required to complete an application for a permit . . . ." Clean Water Act § 404(a), 33 U.S.C. § 1344(a).

27. In evaluating an application for a dredge and fill permit, the Corps must apply "guidelines developed by [EPA]." Clean Water Act § 404(b)(1), 33 U.S.C. § 1344(b)(1). These requirements are known as the § 404(b)(1) Guidelines.

**B.     Federal Regulations**

28. The 404(b)(1) Guidelines provide that "no discharge or dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a).

29. The 404(b)(1) Guidelines also provide that where "a discharge is proposed for [wetlands] . . . practicable alternatives that do not involve special aquatic sites are presumed to be available, unless clearly demonstrated otherwise." 40 C.F.R. § 230.10(a)(3).

30. In addition to complying with the 404(b)(1) Guidelines, when issuing dredge and fill permits the Corps must also comply with its own regulations, which are "applicable to the review of all applications for DA [Department of the Army] permits." 33 C.F.R. § 320.4.

31. In determining whether to issue a Section 404(b) permit to dredge and fill wetlands, the Corps' regulations require it to assess if issuance "would be contrary to public interest." 33 C.F.R. § 320.4(a)(1).

32. To evaluate the public interest, "[a]ll factors which may be relevant to the proposal must be considered including the cumulative effects thereof: among those are conservation, economics, aesthetics, general environmental concerns, wetlands, historic properties, fish and wildlife values, flood hazards, floodplain values, land use, navigation, shore erosion and accretion, recreation, water supply and conservation, water quality, energy needs, safety, food and fiber production, mineral needs, considerations of property ownership and, in general, the needs and welfare of the people." 33 C.F.R. § 320.4(a)(1).

33. The Corps' regulations provide that an application for a Section 404 permit to dredge and fill wetlands "must include a complete description of the proposed activity including . . . the location, purpose and need for the proposed activity. . . ." 33 C.F.R. § 325.1(d)(1).

34. In addition, all activities "which the applicant plans to undertake which are reasonably related to the same project and for which a DA permit would be required should be included in the same permit application. District engineers should reject, as incomplete, any permit application which fails to comply with this requirement." 33 C.F.R. § 325.1(d)(2).

35. An application is determined to be complete "when sufficient information is received to issue a public notice." 33 C.F.R. § 325.1(d)(10).

36. Public notice serves as "the primary method of advising all interested parties of

6

the proposed activity . . . and of soliciting comments and information necessary to evaluate the probable impact on the public interest." 33 C.F.R. § 325.3(a).

37.     Notice to the public must "include sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment." 33 C.F.R. § 325.3(a).

### C.     The National Environmental Policy Act

38.     NEPA requires all federal agencies proposing major federal action significantly affecting the environment to include a detailed statement on "(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, [and] (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity . . . ." NEPA § 102(C), 42 U.S.C. § 4332(C).

39.     The regulations implementing the NEPA requirements, promulgated by the Council on Environmental Quality ("CEQ Guidelines") stress the importance of public participation in the NEPA process. They provide that "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken" and that "public scrutiny [is] essential to implementing NEPA." 40 C.F.R. § 1500.1(b).

### D.     The Administrative Procedure Act

40.     The APA additionally provides that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure

required by law. . . ." 5 U.S.C. § 706(2).

## FACTS

41. Hydraulic fracturing is an oil and gas production technique used after a horizontal well is drilled. It involves pumping a proprietary mix of fluids, including toxic chemicals, and sand or ceramic-based material (known as "proppants") into a well under extreme pressure to create or restore cracks in rock formations underground to stimulate production and flow of oil and natural gas.

42. On April 14, 2014, the Corps issued a joint public notice—with the Louisiana Department of Environmental Quality (LDEQ)—announcing that Helis Oil had applied to develop a horizontal drilling and hydraulic fracturing operation on 10.55 acres of wetlands near Louisiana Highway 1088 in St. Tammany Parish ("initial application").

43. The April 14, 2014, public notice announced the start of the public notice and comment period for Helis Oil's initial permit application.

44. During this initial public comment period, the Corps, LDEQ, and EPA requested additional information from Helis Oil regarding mandatory requirements of the Clean Water Act and implementing regulations.

45. Specifically, on June 19, 2014, the Corps requested that Helis Oil provide additional information necessary for the Corps to conduct its public interest review under 33 C.F.R. § 320.4(a). Among the issues the Corps requested that Helis Oil address were the numerous migration pathways through which potential contamination from the well could reach the Southern Hills Aquifer.

46. The Southern Hills Aquifer is an EPA-designated sole source drinking water aquifer. It is the sole source of drinking water for Abita Springs, and the sole source of drinking

water for St. Tammany Parish. In total, it serves as a drinking water source for nearly 1,100,000 people in the state of Louisiana.

47. On July 2, 2014, the Corps sent another letter to Helis Oil requesting additional information necessary for Helis Oil to meet its burden to overcome the presumption that alternative, non-wetland sites were available for its project. This information is required under NEPA, the 404(b)(1) Guidelines, and the Corps' public interest regulations.

48. In its July 2, 2014, letter, the Corps stated: "The Corps presumes that there may be other available sites in this geographical area that would accommodate the applicant's desired goals, for drilling into the Tuscaloosa Shale Play and that would be economically viable and environmentally less damaging." It recommended that Helis Oil "conduct a search and submit an alternative analysis that encompasses other available sites regionally located."

49. The Corps deemed the issues it raised in its June 19, 2014, and July 2, 2014, letters to be substantial.

50. Upon information and belief, Helis Oil provided no written response to the Corps' June 19, 2014, and July 2, 2014, requests during the Corps' consideration of its initial application.

51. On July 28, 2014, the Corps arranged for a Geologic Review meeting with the Louisiana Geological Survey regarding Helis Oil's initial application. The meeting included representatives from the Corps, Helis Oil, the EPA, the LDEQ, and the Louisiana Department of Wildlife and Fisheries.

52. At the Geologic Review meeting, Helis Oil presented data to the agency officials, including the Corps officials, attending the meeting.

53. Upon information and belief, the Corps relied on this data in conducting the

9

alternatives analysis required by the 404(b)(1) Guidelines and NEPA.

54. Abita Springs Mayor Greg Lemons asked the Corps to allow him to attend the Geologic Review meeting. The Corps informed Mayor Lemons that it would not allow him to attend the Geologic Review meeting.

55. The public was excluded from the Geologic Review meeting.

56. The data Helis Oil presented at the Geologic Review meeting has never been made available to the public by the Corps or any other entity.

57. Following the Geologic Review, on September 3, 2014, Helis Oil filed a revised application with the Corps ("revised application"). In its revised application, Helis Oil split its fracking project into two phases, and applied for Corps approval for only Phase I of the project – construction of a well pad for a vertical exploratory well, requiring it to dredge and fill 3.21 acres of wetland.

58. Upon information and belief, Helis Oil was advised by the Corps or the Louisiana Geological Survey at the Geologic Review meeting to take this phased approach to permitting.

59. Helis Oil described the purpose of Phase I as "to confirm the production potential" of its proposed location.

60. Helis Oil's revised application eliminated discussion of the fracking aspect of its project, mentioning only that Phase II would involve drilling a horizontal well.

61. Helis's plans to drill a horizontal well and hydraulically fracture that well are related to its planned Phase I vertical, exploratory well which forms the basis of its revised application.

62. In its revised application, Helis Oil included an exhibit entitled "Response to USACE 6/20/14 Request for Information" ("Response"). This exhibit marked the first time Helis

Oil responded in writing to any of the deficiencies noted in the Corps' June 19, 2014, and July 2, 2014, requests for more information on the Helis Oil initial application.

63.     In its Response, Helis Oil refused to respond to any of the Corps' June 19, 2014, and July 2, 2014, questions which Helis Oil deemed as pertaining to the fracking aspect of its project, stating that its Response was "limited to requests that pertain to the Phase 1 drilling of the vertical well only."

64.     On October 14, 2014, the Corps (and LDEQ) publicly noticed Helis Oil's revised application. The thirty-day notice and comment period ended on November 13, 2014.

65.     Abita Springs timely submitted comments to the Corps on Helis Oil's application on November 13, 2014.

66.     On January 2, 2015, Helis Oil submitted to the Corps over 500 pages of documentation, much of it technical, entitled "Response to Comments."

67.     This documentation discussed several issues of interest to Abita Springs and the general public, including: a) a transcript of the testimony of three Helis Oil consultants at an evidentiary hearing held before the Louisiana Department of Natural Resources regarding various aspects of the project; b) Exhibits provided by these consultants at the hearing; c) a fluid migration study that purports to demonstrate how far toxic chemicals would travel through the Southern Hills Aquifer if they leaked from the well; and d) three additional statements by Helis Oil consultants and/or representatives which purport to meet Helis Oil's burden to establish that that no alternatives to its proposed site existed.

68.     The Corps relied on information that was not provided in time for public comment when deciding to grant Helis Oil a permit.

69.     On January 14, 2014, Abita Springs requested that the Corps reissue its public

11

notice and reopen the notice and comment period to allow for comment on the documentation Helis Oil submitted after the comment period responding to information the Corps requested back in June 2014.

70. The Corps did not grant Abita Springs' request that it issue a new public notice and reopen the comment period.

71. On June 8, 2015, the Corps issued the wetlands destruction permit at issue (MVN-2013-2952-EOO) to Helis Oil.

## CAUSES OF ACTION

### First Cause of Action

**(Failure to provide for public comment on a complete application and full administrative record)**

72. The Helis Oil permit application was incomplete on October 14, 2014, when the Corps publicly noticed the comment period on the revised application.

73. The Corps is required to postpone notice until it has a complete application.

74. The Corps is required to consider mitigation and alternatives in making a decision to issue a permit, issues not addressed in the application or notice.

75. The Corps received information regarding mitigation and alternatives at the Geological Review which it did not share with the public.

76. The Corps received information regarding mitigation and alternatives in an addendum of over 500 pages to the Helis application after the comment period was closed.

77. The Corps relied on this information to issue the permit.

78. The public was denied the opportunity to comment on this critical information.

79. The Corps denied Abita Springs the right to "meaningfully comment" under 33 C.F.R. § 325.3(a). Also, by failing to disclose critical material during the comment period, the Corps deprived Abita Springs of its right under 5 U.S.C. § 553 "to participate in rulemaking."

### Second Cause of Action
### (Arbitrary and Capricious Decisionmaking and Violation of Federal Law)

80. The record does not support a conclusion that there is no "practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a). Accordingly it was unlawful for the Corps to fail to apply the presumption of 40 C.F.R. § 230.10(a)(3) ("practicable alternatives … are presumed to be available, unless clearly demonstrated otherwise.").

81. Issuance of the permit was contrary to the public interest and thus prohibited by 33 C.F.R. § 320.4(a),

### Third Cause of Action
### (National Environmental Policy Act Violations)

82. The Corps' failure to disclose critical material during the comment period deprived Abita Springs of its right to participate in the NEPA process.

83. The Corps failed to conduct a lawful analysis of alternatives pursuant to 40 C.F.R. § 1508.9(b).

### PRAYER FOR RELIEF:

WHEREFORE, Abita Springs respectfully prays for judgment as follows:

A. An order vacating and remanding the Corps' issuance to Helis Oil of the wetlands destruction permit at issue (MVN-2013-2952-EOO).

B. An award of appropriate attorneys' fees as provided by the Equal Access to Justice Act. *See* 28 U.S.C. § 2412.

C. An award of such other relief as the Court deems just and proper.

Respectfully submitted on June 26, 2015

/s Adam Babich
Lisa Jordan, La. Bar No. 20451
Adam Babich, La. Bar No. 27177
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, Louisiana 70118
Telephone: (504) 865-5789
Direct: (504) 314-2481
Fax (504) 862-8721
*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that on June 26, 2015, I caused a copy of the foregoing to be served through the Court's CM/ECF system to all parties.

/s Adam Babich
Adam Babich